AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| FRANCISCO ASIAIN BAHENA, a/k/a, "FRANK" | ) | Case No.  23-6199-Hunt |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 2020 through the present__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1956(h) | Conspiracy to Launder Monetary Instruments and Conspiracy to Engage in Monetary Transactions in Property Derived from a Specified Unlawful Activity |
| Title 21, United States Code, Sections 841(a)(1) and 846 | Possession with Intent to Distribute Controlled Substances and Conspiracy to Possess with the Intent to Distribute Controlled Substances |
| Title 21, United States Code, Sections 960 and 963 | Importation of a Controlled Substance and Conspiracy to Import a Controlled Substance |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

HSI TFO William Schwartz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. 4.1 by telephone

Date: 05/04/2023

*Judge's signature*

City and state: Fort Lauderdale, Florida   Patrick M. Hunt, United States Magistrate
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, William Schwartz, being duly sworn, hereby depose and state:

1. I am a full-time detective of the Broward Sheriff's Office (BSO) and a Task Force Officer with the United States Department of Homeland Security, Homeland Security Investigations (HSI). I have been a Task Force Officer with HSI since September 2015 and was previously a Task Force Officer for the Drug Enforcement Administration (DEA) from 2009 to 2014. As a Task Force Officer with the HSI Fort Lauderdale Office in Broward County, Florida, I am responsible for investigating violations of federal law relating to immigration and customs enforcement that includes investigations involving the importation and distribution of controlled substances and the possession and concealment of such controlled substances and the laundering of proceeds earned from narcotics trafficking. I have received specialized training in narcotics trafficking and money laundering investigations. I have been involved in the execution and planning of narcotics related arrests with both federal and state law enforcement for over twenty-six (26) years, including in my current position with HSI for over seven (7) years. I have been personally involved in multiple investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. During the course of these interdictions and investigations, I have seized cocaine, marijuana, heroin, fentanyl and prescription drugs. I have also debriefed defendants, informants, and witnesses who had personal knowledge of major narcotics trafficking organizations. As a result of my experience and training, I am familiar with the manner in which various types of illegal drugs are cultivated, manufactured, smuggled, distributed, and diverted, as well as the various methods used by narcotics traffickers to finance drug transactions and launder drug proceeds. As a law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, I am empowered by law

to conduct investigations of and make arrests for, but not limited to, offenses enumerated in Titles 18, 19, 21, 31 and 46 of the United States Code.

2. I submit this affidavit based on information known to me personally from the investigation, as well as information obtained from others who were directly involved in the matter or have personal knowledge of the facts herein. The affidavit does not include all the information known to me, but only information I deem sufficient to establish probable cause for the arrest of Francisco **ASIAIN BAHENA** (hereinafter referred to as "**BAHENA**") for violation of the below recited Federal Statutes.

### Violations of Law

3. This affidavit is written in support of a criminal complaint charging **BAHENA** with Conspiracy to Launder Monetary Instruments, in violation of Title 18 U.S.C. § 1956 (h); Conspiracy to Engage in Monetary Transactions in Property Derived from a Specified Unlawful Activity, in violation of Title 18 U.S.C. § 1956(h); Possession with Intent to Distribute Controlled Substances, in violation of Title 21, U.S.C. § Section 841(a)(1); Conspiracy to Possess with the Intent to Distribute Controlled Substances, in violation of Title 21, U.S.C. § 846; Importation of a Controlled Substance, in violation of Title 21, U.S.C. § 960; and Conspiracy to Import a Controlled Substance, in violation of Title 21, U.S.C. § 963.

### Probable Cause

### Arrest of the Cooperating Defendant (hereinafter referred to as the "CD")

4. On or about March 9, 2020, an individual, the CD, was arrested in the Southern District of Florida for possession with intent to distribute fifteen (15) kilograms of heroin, in violation of Title 21 U.S.C. § 841 and was taken into custody.

5. After having been advised of his Miranda rights the CD agreed to cooperate with US law enforcement, including providing information about the drug organization for which he transported the

heroin, in the hope of a potential sentence reduction.[1]   The CD told law enforcement that during the past two (2) years, the CD received a large amount of U.S. currency derived from the sale of narcotics and was instructed to convert the U.S. currency into Bitcoin, a form of cryptocurrency. The CD told law enforcement that he acted on behalf of Frank LNU who was based in Mexico. The CD stated that pursuant to instructions from Frank LNU, the CD electronically transferred the narcotics proceeds to a Bitcoin "wallet" supplied by Frank LNU. The CD estimated that over the previous 6 months he had been directed by Frank LNU to launder approximately ten (10) million dollars in narcotics proceeds.

6.   The CD further advised that Frank LNU was a member and/or associate of a Mexican drug cartel known as the Jalisco New Generation cartel (CJNG).  Law Enforcement officials are aware that the CJNG is a violent drug trafficking and money laundering cartel based in Mexico, which operates in Mexico and the United States.

**Introduction of the Undercover Law Enforcement Agent (hereinafter referred to as the "UCA")**

7.   Pursuant to the CD's cooperation, the CD introduced an associate to US law enforcement. At the direction of US law enforcement and pursuant to investigative strategy, the associate of the CD laundered narcotics proceeds for associates of Frank LNU by converting the illegal proceeds to Bitcoin.   In or about January 2021, the associate of the CD introduced the UCA to associates of Frank LNU. The UCA ultimately began to communicate with Frank LNU via WhatsApp and telephonic communications.

8.   Pursuant to investigative strategy, the UCA portrayed himself as a South Florida based money launderer capable of receiving narcotics proceeds throughout various cities in the United States and converting the proceeds into cryptocurrencies, specifically Bitcoin. For a percentage fee the UCA would electronically transfer the Bitcoin into a Bitcoin wallet provided by Frank LNU.

---

[1] On or about February 26, 2020, the CD was sentenced to a period of 51 months of incarceration. A motion for reduction of sentence was not filed in this matter.

9. With the assistance of law enforcements officials in various cities throughout the United States, several UCAs met with individuals associated with Frank LNU in various public areas. Frank LNU's associates have delivered narcotics proceeds in the form of US currency to undercover law enforcement personnel in the following cities: Birmingham, Alabama; New York City, New York; Chicago, Illinois; Dayton, Ohio; Raleigh, North Carolina, Greensboro, North Carolina; Atlanta, Georgia and Fort Lauderdale, Florida. Since July 2020, law enforcement officials have conducted 50 bulk currency pickups directed by Frank LNU totaling $6,978,888 USD, which law enforcement converted into cryptocurrencies through certified undercover accounts. Law enforcement has then traced the funds as the funds were transferred to other conspirators.

10. The UCA, through telephonic communication with Frank LNU and investigative techniques by law enforcement officials, positively identified Frank LNU as **BAHENA**, a Mexican citizen residing in Mexico.

11. Since in or about January 2021, the UCA has developed a social relationship with **BAHENA** and pursuant thereto has met with **BAHENA** in the United States on six (6) occasions.

### The "Trap" Vehicles

12. In or about May 20, 2021, **BAHENA** traveled to Broward County, Florida and met with the UCA at an undercover facility maintained by law enforcement officials and discussed having the UCA build hidden compartments ("traps") in a vehicle used by an associate of **BAHENA**. **BAHENA** further stated that the "trap vehicle" would strictly be used to transport (smuggle) money (narcotics proceeds).

13. In or about June and July 2021, an associate of **BAHENA** supplied a vehicle to the UCA for the purpose of constructing a concealed compartment, which law enforcement officials returned with three hidden "trap" compartments installed inside the vehicle. Pursuant to court authorization, the government placed a GPS tracking device concealed within the vehicle in order to identify and locate the areas used

by BAHENA to store the narcotics proceeds and the routes used by the couriers.

14. In December 2021, an associate of BAHENA discussed having the UCA build "traps" in a second vehicle. Pursuant to court authorization, the government placed a GPS tracking device concealed within the vehicle in order to identify and locate the areas used by BAHENA to store the narcotics proceeds and the routes used by the couriers. The two trap vehicles operated simultaneously traveling throughout the Eastern United States picking up narcotics proceeds and delivering the illegal proceeds to persons in South Florida. In mid-2022, pursuant to investigative strategy, on two separate occasions, law enforcement stopped the "trap" vehicles as they entered Broward County from up north and seized over $500,000 in U.S. currency.

15. During the course of the investigation, due to leads generated by conversations with BAHENA and his associates and the use of the GPS tracker, among other investigative techniques, law enforcement seized illegal narcotics proceeds totaling $2,471,065 in U.S. currency, including the money seized from the "trap" vehicles.

**Importation and Distribution of Illegal Narcotics**

16. On or about May 20, 2021, as discussed above, BAHENA traveled to Broward County, Florida and met with the UCA at an undercover facility maintained by law enforcement officials. During that meeting the UCA displayed to BAHENA a tractor trailer which could be used to transport narcotics from Mexico to the United States. The UCA consensually recorded the conversation with BAHENA. During that conversation the UCA and BAHENA discussed importing narcotics into the United States from Mexico.

17. In or about January 2022, BAHENA and several family members traveled to Chicago to meet with the UCA and another undercover agent (UCA2). On that occasion, the UCA and BAHENA had a private conversation during a dinner meeting. BAHENA and the UCA discussed potential narcotics

trafficking from Mexico into the United States. They discussed various locations in Texas where **BAHENA** could arrange deliveries of narcotics to the UCA to be transported throughout the United States. They discussed the price per kilogram of heroin in Mexico and the potential profit to be made in the United States.

18. During the month of October 2022, **BAHENA** and the UCA discussed the importation of methamphetamines from Mexico into the United States. During the month of December 2022, on two occasions, **BAHENA** arranged the delivery of approximately 22.5 pounds of methamphetamine to an undercover location provided by the UCA in exchange for $56,500 in U.S. currency. A field test conducted on the methamphetamines revealed a positive result for the presence of methamphetamines. Furthermore, laboratory analysis confirmed the presence of methamphetamines in one of the shipments received by the UCA. The other shipment is still pending analysis results.

19. During the course of the investigation, due to information generated from conversations with **BAHENA** and his associates, law enforcement determined some methods used by **BAHENA** and his associates to illegally import and distribute narcotics into the United States and where some of the illegal narcotics are located. As a result of this information, law enforcement has, to date, seized 18.30 kilograms of cocaine, 55.31 kilograms of heroin, 24.10 kilograms of methamphetamine, and 5.7 kilograms of fentanyl.

## Conclusion

20. Based upon the aforementioned facts, I believe that there is probable cause that, in Broward County, Florida in the Southern District of Florida, and elsewhere, there is probable cause to believe that from in or about March 2020, to the present, Francisco **ASIAIN BAHENA**, has committed the following violations of federal law; Conspiracy to Launder Monetary Instruments, in violation of Title 18 U.S.C. § 1956(h); Conspiracy to Engage in Monetary Transactions in Property Derived from a Specified

Unlawful Activity, in violation of Title 18 U.S.C. § 1956(h); Possession with Intent to Distribute Controlled Substances, in violation of Title 21, U.S.C. § Section 841(a)(1); Conspiracy to Possess with the Intent to Distribute Controlled Substances, in violation of Title 21, U.S.C. § 846; Importation of a Controlled Substance, in violation of Title 21, U.S.C. § 960; and Conspiracy to Import a Controlled Substance, in violation of Title 21, U.S.C. § 963.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
WILLIAM SCHWARTZ, HSI TFO

Sworn to and subscribed before me this 4th day of May 2023

_____
HONORABLE PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE